J. W. McCANN, Appellant, v. E. W. CLARK et al., Appellees (and one other case).

FRAUD: Ratification by Principal—Evidence. Evidence reviewed, and held insufficient to show ratification by defendant of the fraudulent acts of an assumed agent.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

TUESDAY, JUNE 19, 1917.

Action for damages for fraud. It is averred that the alleged fraud was actually perpetrated by the defendants Barnes Brothers and by one Northup, as purported agents of the defendant Clark; that the defendant Clark, as the purported principal, ratified the acts of the alleged agents by accepting the benefits of the contract fraudulently obtained by such agents. At the close of all the evidence, there was a directed verdict for the defendant Clark and for the defendants Barnes Brothers. Northup had originally been made a party defendant, but the plaintiff voluntarily dismissed the action as to him before trial. This case was before us on a former appeal of the plaintiff's and was reversed and remanded. See 166 Iowa 705. Pursuant to such remand, the cause was again tried, with the result here indicated. Our first impressions of the present record were that our former holding would necessitate another reversal and remand of the case. An examination of this record, however, discloses a materially different state of the evidence from that contained in the former record, and requires us to pass upon the merits of this appeal regardless of the former reversal.—*Affirmed.*

*A. A. McGarry,* for appellant.

*F. H. Helsell, J. W. White* and *Hunn & Jones,* for appellees.

Evans, J.—1. On and before April 12, 1911, the plaintiff was the owner of a general store in the little town of Cummings, in Warren County. Defendants Barnes Brothers were real estate agents in Des Moines. Former defendant Northup was also a real estate agent in Des Moines. Defendant E. W. Clark was a resident of Sioux Rapids. Plaintiff McCann was embarrassed with debts, and was anxious to sell his stock of goods. This desire was shared by the Bank of Cummings, a creditor, which held an unrecorded mortgage for $1,300 against such stock.

*Margin note: Fraud: ratification by principal: evidence.*

Cassady was the vice-president of this bank, and Glynn, its cashier. On April 12, 1911, Cassady and McCann came to the office of Barnes Brothers at Des Moines and, in effect, listed the stock of goods with Barnes Brothers for sale or trade. A commission of $200 had previously been agreed' on between McCann and Cassady, and it was then agreed with the Barnes Brothers that such commission should be split between them and Cassady. Two days later, Barnes Brothers found a prospective customer in Northup, who claimed to have the agency for a sale or trade of 80 acres, located on the Skunk River in Jasper County, and belonging to the defendant Clark. On April 16th, Northup and Clyde Barnes and plaintiff McCann went upon the land for examination. The land being satisfactory to McCann, the parties met at the Cummings Bank on April 17th, and a contract of exchange of the land and the stock of goods was entered into in the names of Clark and McCann. Clark's name was signed by Northup as a purported agent. At the same time, a bill of sale was executed by McCann to Clark, and delivered either to Barnes or to Northup. This bill of sale warranted the title. After the execution and delivery of these papers, Cassady disclosed the fact that the bank held a $1,300 mortgage on the stock. He thereupon delivered the mortgage to Barnes to be delivered to Clark when Clark executed a deed of the land. The bank retained the $1,300 note. At the same time, McCann assigned to the Cummings Bank all his interest in the land contract above referred to, and directed that the deed of the land pursuant thereto should be made to Glynn, the cashier. A formal transfer of possession of the stock of goods was made to Northup in this manner: McCann delivered the keys to Northup, and Northup delivered the same to Miss Mizner, the clerk who had been in charge of the store for McCann during his entire ownership thereof. These formalities were observed because of fear of interference by

creditors, several of whom were wholesale houses. The bill of sale was put into the hands of Barnes, to be delivered to Clark when a deed should be received from Clark. But Cassady requested that, for the protection of all parties, the bill of sale should be recorded at once. This was agreed to by Northup, and the same was accordingly done. Northup had in fact no authority to sign Clark's name to any contract. He had no authority to sell or trade the land in question. He had ascertained from Clark that the land was for sale or trade, and that Clark would accept a stock of goods in trade if he was satisfied therewith. The utmost that could be implied from the foregoing would be that Northup had authority to find a customer for Clark. Clark came to Des Moines on April 21st, and then learned for the first time of the proposed trade. In his conversation with Northup on the subject, it developed that Northup was mistaken in his conception of the boundary lines of this eighty. There were no improvements on the land, and its boundaries were not readily ascertainable. There was an old fence extending eastward from the highway on the west. At the time of the visit of the parties to the land, this fence was taken to be the north line of the land, described as the north half of the northwest quarter of Section 24. In truth, this fence was located 10 or 15 rods farther south than the north line. In looking over the land, therefore, and estimating its extension toward the south from such fence, their estimates took in land adjoining on the south, which was deemed to be better land. This mistake having come to light in the conversation at Des Moines between Northup and Clark and the Barnes Brothers, Clark refused to have anything further to do with the matter until the mistake should be brought to the attention of McCann. The parties went to Cummings and met McCann and Cassady at the bank, and there advised them of the mistake. At the same time, Clark expressed

his willingness to deed the land described in the contract and to accept the stock of goods in payment therefor, if McCann so desired after being informed of the mistaken boundary. It is undisputed that both McCann and Cassady elected not to accept Clark's land and to rescind the Northup contract. Cassady testified as follows:

"Mr. Clark said he was willing to give him the bill of sale back for the stock or fix it any way satisfactory, and I said I thought, under the circumstances, that Mr. McCann had better take the bill of sale back and call the deal off. Mr. Clark gave me the bill of sale he had then. I said that before and I say it now."

In every legal sense, this ended Clark's connection with the transaction. The only pretense of dispute with Clark arose afterwards, as to the form in which his apparent interest under the bill of sale should be relinquished. Clark expressed himself as ready and willing to sign any paper deemed reasonably necessary to that end. Cassady prepared for his signature a formal bill of sale, with covenants of warranty. Clark asked that a provision should be inserted to the effect that such bill of sale was made by him in cancellation of the previous bill of sale. Cassady testified at this point as follows:

"He said he would make a bill of sale back to the man that he got it from, and that he wanted to put in the bill of sale that this was made to nullify a bill of sale that had been made to him. Mr. Clark did not sign the bill of sale after I made it out. Exhibit 3 is the bill of sale that was written out by my stenographer in that bank. I did not put that in the bill of sale, that 'this is to nullify a certain bill of sale given by Mr. McCann to E. W. Clark, dated April 17, 1911."

Cassady was not willing to insert this clause because of its possible effect upon creditors. Naturally, Clark was not willing to become involved in any manner with Mc-

Cann's creditors. Cassady then proposed that Clark execute a bill of sale in blank as to the grantee and leave the same in the hands of Barnes for future use. Clark was not willing to do this. Such a course would necessarily involve him in liability to an innocent grantee, whose name might thereafter be inserted. The final outcome of this negotiation was that Clark took the bill of sale prepared by Cassady and inserted therein the following: "This bill of sale is to nullify a certain bill of sale between J. W. McCann and E. W. Clark, dated April the 17th, 1911;" and on the same day, executed the same in such form, duly acknowledged, and left it with Barnes for the plaintiff, and returned to his home. Clark never assumed any dominion over the property and never received a dollar of benefit from the transaction in any way. He was clearly right in his insistence that the paper to be executed by him should show openly the purpose for which it was executed. He was clearly right, also, in refusing to execute a bill of sale to a blank grantee.

This action is for damages predicated upon alleged fraud and deceit upon the part of Northup and Barnes in representing to plaintiff the subject matter of the contract. Confessedly, Clark did not participate in the original fraud. The petition connects Clark therewith by the following allegations:

"And that plaintiff, acting thereon and relying on the statements and inducements aforesaid and representations aforesaid, delivered, transferred and conveyed to defendants and to E. W. Clark the certain stock of goods aforesaid, and the bill of sale thereof was taken by said Clark and placed of record in Warren County, Iowa, and said Clark took possession of and managed and controls said stock of goods and owns same, thereby ratifying, approving and confirming all acts and transactions of said Barnes Brothers and said Northup, and still refusing to deed, con-

vey and transfer to said plaintiff the said lands so shown or any lands or real estate whatever; that by these means, acts and transactions aforesaid, the said defendants have defrauded, cheated, swindled the said plaintiff out of his stock of goods aforesaid."

If Northup was guilty of any fraud, then the conduct of Clark was the very reverse of a ratification. The evidence, therefore, wholly fails to sustain the petition in this respect, in that it fails to show any ratification by Clark of the alleged fraud or mistake of his alleged agents. The allegation that Clark received the benefits of the contract is wholly unsupported in the evidence. The fact is that the stock of goods remained in the same building, the possession of which was in McCann under a lease from his landlord until it was levied upon and sold under process against McCann in favor of his creditors. It was thus all subjected to the payment of his debts. We think it clear that the evidence wholly fails to sustain the petition in its declaration of liability on the part of Clark.

2. Did the evidence warrant a finding of liability against the Barnes Brothers? The plaintiff assumes that the Barnes Brothers were acting as agents for Clark. Even the evidence on behalf of plaintiff is wholly to the contrary. They were confessedly employed by McCann and Cassady. The question, however, whose agents they were is not controlling, under the allegations of the petition. If they were guilty of deceiving the plaintiff, their liability surely could not be minified because they were acting as his own agents. Does the evidence show any fraud or deceit on their part? We think it does not. The only testimony on the subject is that Clyde Barnes, who went with McCann and Northup, had never been upon the land before, and knew nothing about its location except what he ascertained from Northup. Northup had been upon the premises before. We have no occasion to consider whether

the evidence would have been sufficient to go to the jury as to the liability of Northup. The plaintiff himself dismissed as to him. We reach the conclusion that the trial court properly directed the verdict for all the defendants.

3. The Cummings Bank brought action against the same defendants, predicated upon the same state of facts, and upon the further fact that it was a mortgagee of the stock of goods. This case was, by stipulation, tried in the district court upon the same evidence as in the case of Mc-Cann. The trial court directed a verdict therein for the defendants upon the same grounds as in the *McCann* case. An appeal being taken therein, both appeals were submitted together. Our foregoing conclusions in the *Mc-Cann* case are decisive also of the appeal in the second case. The judgments below will be affirmed in both appeals.—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.